UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BARRY CIVIL CONSTRUCTION, INC., a Washington corporation,<br><br>Defendant. | Case No. C16-0404-JPD<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

I.      INTRODUCTION AND SUMMARY CONCLUSION

Plaintiffs, Local 302 of the International Union of Operating Engineers ("Local 302" or the "Union") and three Operating Engineers trust funds, move the Court for summary judgment against defendant Barry Civil Construction, Inc. ("Barry Civil"). Dkt. 11. Barry Civil opposes the motion. Dkt. 14. After careful consideration of the plaintiffs' motion, Barry Civil's opposition, plaintiffs' reply, and the balance of the record, the Court GRANTS plaintiffs' motion for summary judgment. Dkt. 11.

ORDER
PAGE - 1

## II.    BACKGROUND

The relevant facts of this case are undisputed. Plaintiff Operating Engineers trust funds (the "Trust Funds") are employee benefit plans governed by § 302(c)(5) of the Labor Management Relations Act of 1947, and the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 186(c)(5); 29 U.S.C. § 1001 *et seq.*, as amended (1988). The Trust Funds provide medical, retirement, and training benefits to eligible employees. *See* Dkt. 12 at ¶ 7 (Kafer Decl.). Specifically, the Trust Funds include the Locals 302 and 612 of the International Union of Operating Engineers - Construction Industry Health and Security Fund, the Locals 302 and 612 of the International Union of Operating Engineers - Employers Construction Industry Retirement Fund, and the Western Washington Operating Engineers - Employers Training Trust Fund. *Id.* at ¶ 2; Dkt. 11 at 1. Each Trust Fund was established by a written trust agreement (the "Trust Agreements"). *See* Dkt. 12 at ¶ 10 (Kafer Decl.).

Individual employers bound by a collective bargaining agreement with plaintiff Local 302, the 2015-2018 Operating Engineers Local 302 Master AGC Labor Agreement (the "Master Labor Agreement"), are required to promptly pay monthly contributions to the Trust Funds at specified rates for each hour of compensation the employer pays to its eligible employees. Dkt. 12, Ex. B. The Master Labor Agreement and Trust Agreements provide that the contributions to the trust funds shall be made promptly, and in any event on or before the fifteenth (15) day of the month following the month in which the hours were worked. *See* Dkt. 12, Ex. C at 83-84; Dkt. 12, Ex. D at 146-47; Dkt. 12, Ex. E at 184-85. In addition, the Trust Agreements provide that an employer who is delinquent in making its required contributions to the Trust Funds must pay the unpaid contributions, as well as liquidated damages "in the sum of twelve percent (12%) of the amount of [the] delinquency," "interest at the rate of twelve percent (12%) per annum" for the

ORDER
PAGE - 2

delinquent contributions, attorneys' fees, and court costs relating to the collection of delinquent contributions.  *See* Dkt. 12, Ex. C at 84; Dkt. 12, Ex. D at 147; Dkt. 12, Ex. E at 185.

Barry Civil became bound to the Master Labor Agreement, as well as the three Trust Agreements, when it entered into an Operating Engineers Local 302 Compliance Agreement (the "Compliance Agreement") with Local 302 on January 12, 2010.[1]  *See* Dkt. 12, Ex. A.  Barry Civil acknowledges that it is a party to the above-described agreements, and is therefore obligated to remit monthly contributions to the Trust Funds following work by its eligible Operating Engineers employees and that "such payment shall be tendered by the 15th of the month following the month that the hours were worked."  Dkt. 14 at 2.  Moreover, Barry Civil admits that its contributions to the Trust Funds for January 2016 through April 2016 were not timely paid.  *Id*. at 3 (acknowledging that payment was not tendered "until *after* the 15th day of the month following the month in which the union members worked.").

On March 18, 2016, plaintiffs initiated this action against Barry Civil to recover over $25,000 in unpaid contributions, liquidated damages, interest, attorneys' fees and costs.  Dkt. 1; Dkt. 12, Ex. G.  Plaintiffs' initial motion for summary judgment asserted that Barry Civil made delinquent payments for January 2016, owes no payments for February 2016, and "has still not made any payments for March and April of 2016."  Dkt. 11 at 2.  However, in their reply brief, plaintiffs acknowledged that since this action was initiated, "Barry Civil has also made its contributions, dues, and UP payments for March and April 2016."  Dkt. 16 at 2.  Thus, "Barry

---

[1] Specifically, by signing the Compliance Agreement, Barry Civil agreed to be bound by the 2007-2010 Associated General Contractors of Washington Agreement, as well as any successor agreement.  Dkt. 12 (Kafer Decl.) at ¶ 8; Dkt. 12, Ex. A at 1.  The parties' relationship is currently governed by the 2015-2018 Master Labor Agreement, which is the successor to the 2007-2010 Associated General Contractors of Washington Agreement.  Dkt. 12 (Kafer Decl.) at ¶ 8; Dkt. 12, Ex. B.

ORDER
PAGE - 3

Civil has paid all of its contributions, dues, and UP payments for January through April 2016," although these payments were all late. Dkt. 17 (Second Kafer Decl.) at ¶ 4. As a result, plaintiffs are only seeking $3,667.68 in liquidated damages, $154.72 in interest, and attorneys' fees and costs to be determined because Barry Civil violated the Trust Agreements and federal law by making its contributions, dues, and UP payments late. Dkt. 16 at 2, 9; Dkt. 17 (Second Kafer Decl.) at ¶¶ 5-6, Ex. A.

As noted above, Barry Civil concedes that its contributions and/or payments to the Trust Funds were made after the fifteenth of the month following the month in which the work was completed. However, Barry Civil contends that the parties entered into a Settlement Agreement on March 27, 2015 to resolve two previous cases filed by plaintiffs against Barry Civil in this district (Case Nos. C13-1883-TSZ and C14-1930-JCC). In addition to setting forth the terms by which Barry Civil would pay the overdue contributions and dues that were at issue in those two cases, Barry Civil believes the Settlement Agreement altered its legal obligations under the Trust Agreements to pay by the fifteenth of the month by requiring payment to be tendered via joint check from Barry Civil's general contractors in the future. Dkt. 14 at 3.

Specifically, the Settlement Agreement provides the following with respect to any future payments made by Barry Civil to plaintiffs:

> **In addition, current monthly contributions must be made timely; to wit, the 15th of each month.**
>
> **Defendant will deliver to its general contractors and/or subcontractors remittance reports for future contributions commencing with its March 2015 contributions and its general contractors and/or subcontractors will then issue joint checks to [Barry Civil] and Operating Engineers Trust Funds, which [Barry Civil] will endorse over to operating Engineers Trust Funds.**
>
> If payment is not made pursuant to the above agreement, upon ten (10) days written notice to Defendant, the entire balance will become due and owing, with

ORDER
PAGE - 4

>    interest thereafter at the rate of 12% per annum, together with reasonable attorneys' fees and costs thereof . . .
>
>    This Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any and all prior agreements or understandings between the parties hereto pertaining to the subject matter hereof.

Dkt. 12, Ex. H at 2-3 (bold in original).

Barry Civil contends that "since execution of the Settlement Agreement, [Barry Civil] has delivered remittance reports to its general contractors, and its general contractors have issued joint checks for the contributions owed. The timing of the general contractors' payment is beyond [Barry Civil]'s control," and during the period in question the general contractors did not deliver the joint checks until after the fifteenth of the month following the month in which the union members worked. Dkt. 14 at 3. Barry Civil asserts the Settlement Agreement should be interpreted as waiving the timing requirement for payment of contributions and dues in the Trust Agreements, due to the joint check requirement. *Id*. at 4. Alternatively, Barry Civil asks the Court to find that plaintiffs are estopped from enforcing their right to liquidated damages, interest, and attorneys fees and costs because they put this new "joint check" requirement in the Settlement Agreement. *Id*. at 4-5. For the reasons discussed below, the Court finds defendant's arguments unpersuasive.

### III.   JURISDICTION

The parties have consented to this matter proceeding before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Dkt. 9. The Court has exclusive jurisdiction over this action pursuant to 29 U.S.C. §§ 1132(e)(1) and (f). Venue is proper because the Trust Funds are administered in this district. 29 U.S.C. § 1132(e)(2).

IV.     DISCUSSION

A.     *Summary Judgment Standard*

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Genuine issues of material fact exist when the evidence would enable "a reasonable jury . . . [to] return a verdict for the nonmoving party." *Id.*  In response to a summary judgment motion that is properly supported, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial, and produce evidence sufficient to establish the existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986).  A mere scintilla of evidence, however, is insufficient to create a factual dispute.  *See Anderson,* 477 U.S. at 252.  To defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute.  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630-32 (9th Cir. 1987).

B.     *ERISA Governs the "Delinquent Contributions" Provisions of the Trust Agreements, and the Parties' Settlement Agreement Did Not Change the Deadline for Payment*

ERISA governs cases such as this one, where an employer owed contributions to an employee benefit plan at the time the lawsuit was initiated.  *See* 29 U.S.C. § 1144(a) (providing that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."); *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (observing that ERISA's preemption provision is "clearly expansive"); *General Am. Life Ins. Co. v. Castonguay*,

984 F.2d 1518, 1521 (9th Cir. 1993) ("ERISA's preemption clause is one of the broadest ever enacted by Congress, and it preempts even generally applicable laws, not just laws aimed exclusively at employee benefit plans. . . .") (internal citations omitted).  ERISA provides specific remedies for delinquent contributions, including an award of "(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of— (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), [and] (D) reasonable attorney's fees and costs of the action, to be paid by the defendant. . . ."  29 U.S.C. § 1132(g)(2).

Furthermore, ERISA obligates participating employers to make contributions to a multi-employer trust fund in accordance with the terms of the trust agreement or collective bargaining agreement.  *See* 29 U.S.C. §§ 1102(a), 1103(a), 1145.  The language of a written trust agreement defines the rights and obligations of the parties to the trust to the extent they are consistent with ERISA.  *Id.* at § 1145; *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1493-94 (9th Cir. 1990) (internal citations omitted).  As noted above, the Trust Agreements in this case provide that an employer shall pay liquidated damages of 12% of the amount of the delinquent contributions.  Defendant has made no showing in these proceedings that this requirement is somehow inconsistent with ERISA, which provides for liquidated damages of up to 20% of any delinquent contributions.

Finally, the Ninth Circuit has held that § 1132(g)(2) is "mandatory and not discretionary."  *Northwest Adm'rs Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying*, *Co.*, 746 F.2d 557, 569

ORDER
PAGE - 7

(9th Cir. 1984)). Section 1132(g)(2) requires only that: "(1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Id.* (citing *Idaho Plumbers & Pipefitters Health & Welfare Fund*, 875 F.2d at 215). In addition, the Ninth Circuit has held that an employer is liable for mandatory fees under § 1132(g)(2), including interest and liquidated damages, "notwithstanding the defendant's post-suit, prejudgment payment of the delinquent contributions themselves." *Albertson's*, 104 F.3d at 258.[2]

Here, the Court finds that all three criteria for a mandatory award under § 1132(g)(2) are satisfied. Although neither party has advised the Court regarding the precise date that the delinquent contributions were paid to plaintiffs by Barry Civil, it is undisputed that contributions and dues were still outstanding in March 2016 when this action was filed. In addition, Barry Civil paid all delinquent contributions and dues by no later than June 6, 2016. Dkt. 15 (Sturrock Decl.), Ex. B (June 6, 2016 affidavit from the Union confirming that Barry Civil "has paid all benefits due on hours worked by its employees through the month of April 2016."). Accordingly, because Barry Civil made delinquent contributions to the Trust Funds, and the Trust Agreements provide for an award of interest on delinquent contributions, liquidated damages, attorneys' fees, and costs, Barry Civil is liable for such payments pursuant to the Trust Agreements and ERISA.

---

[2] Specifically, the Ninth Circuit expressly rejected the argument that "a mandatory award under § 1132(g)(2) is improper because the employer voluntarily paid the delinquent contributions . . . thus the district court did not enter judgment against [the employer] relating to those contributions. . . ." *Id*. Instead, the court held that mandatory "[f]ees may be awarded even though there is no judgment on the merits or when the dispute has become moot because relief is otherwise obtained." *Id*. (citing *Lads Trucking Co. v. Board of Trustees of W. Conference of Teamsters Pension Trust Fund*, 777 F.2d 1371, 1375 (9th Cir. 1985)).

ORDER
PAGE - 8

C.  *Barry Civil's Waiver and Estoppel Arguments are Unavailing*

Barry Civil argues that because the Settlement Agreement provided that, starting in March 2015, Barry Civil would deliver remittance reports to its general contractors and the general contractors would pay contributions by joint check, the Settlement Agreement modified the terms for when and how Barry Civil would tender payment. Dkt. 14 at 6.  Moreover, Barry Civil reasons that "when read together," the Settlement Agreement and Trust Agreements must be interpreted as requiring payment by joint check issued by the general contractor, and this term "trumps" the deadline for payment.  *Id*.  Barry Civil contends that "[b]ecause neither plaintiffs nor [Barry Civil] can compel a general contractor to issue joint checks by the 15th day of the month following the month that work was performed, the due date of the 15th was, in effect, superseded by the Settlement Agreement."  *Id.*

The Court declines defendant's invitation to interpret the language of the Settlement Agreement as "waiving" Barry Civil's obligations under the Trust Agreements to make timely payment by the fifteenth of the month. Although the Settlement Agreement provides that "[t]his Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any and all prior agreements or understandings between the parties hereto pertaining to the subject matter hereof," it does not contain language waiving any provision of the Trust Agreements with respect to making timely future payments. *See* Dkt. 12, Ex. H at 2-3.  In fact, the opposite is true.  The Settlement Agreement provides, in bold font, that "current monthly contributions must be made timely; to wit, the 15th of each month."  *Id*.  This clear and unambiguous deadline is fully consistent with the Master Labor Agreement and Trust Agreements that require trust contributions and/or payments by the fifteenth of the month following the month that the hours were worked.  Dkt. 12 (Kafer Decl.) at ¶ 15.  The Settlement Agreement also makes it clear that

ORDER
PAGE - 9

if the current monthly contributions are not made by the fifteenth of each month via joint check, the agreement will be breached.  As a result, the Settlement Agreement did not release, waive or excuse Barry Civil from meeting the deadline under the Trust Agreements – it only added to the terms of those agreements by specifying a form of payment, *i.e.*, a joint check issued by the general contractor.

Barry Civil's estoppel argument is similarly unavailing.  Barry Civil contends that under Ninth Circuit law, the estoppel doctrine applies if the following elements are satisfied: (1) the party being estopped must know the facts; (2) the party must intend that its conduct shall be acted on or must so act that the party asserting estoppel has the right to believe it so intended; (3) the latter must be ignorant of the true facts; and (4) the party asserting estoppels must rely on the former's conduct to its injury.  Dkt. 14 at 6-7 (citing *Ellenburg v. Brockway, Inc*., 763 F.2d 1091, 1096 (9th Cir. 1985)).

However, Barry Civil does not attempt to apply each of these elements to the facts of this case, perhaps because they are not satisfied here.  Specifically, Barry Civil does not identify any "facts" that it did not know when it entered into the Settlement Agreement with plaintiffs, or that the plaintiffs allegedly misrepresented.  For example, Barry Civil cannot plausibly claim that it was unaware that general contractors can sometimes be late in making payments to subcontractors, necessitating further effort on Barry Civil's part in order to ensure timely payment by joint check.  As plaintiffs point out, Stephany Sturrock, the President of Barry Civil, admitted in her declaration that "Often, [Barry Civil] general contractors are slow to pay, leaving [Barry Civil] without funds to pay plaintiff Trusts by the 15th day of the month following the month that union members worked." Dkt. 15 (Sturrock Decl.) at ¶ 3.  Indeed, Ms. Sturrock explains that late payments by general contractors have been the primary cause of Barry Civil's

difficulty making timely payments to the trusts in recent years, prompting plaintiffs to file several lawsuits against Barry Civil because "we are dependent upon our general contractors making payment to [Barry Civil] before we can afford to tender payment to the Trusts." *Id.* Thus, Barry Civil was fully aware that general contractors can be late in making payments before it entered into the Settlement Agreement in question. The company cannot reasonably claim that it did not know, or could not have known that general contractors may be late in issuing joint checks. As a result, the estoppel doctrine does not apply in this case.

Although the Court is sympathetic to defendant's apparent plight and financial situation, as its general contractors are not following through on their obligation to timely issue joint checks, only Barry Civil – and not plaintiffs – are in a position to remedy the situation or seek legal redress against a general contractor who is late in issuing payment. The plain and unambiguous language of the Trust Agreements, Master Labor Agreement, and Settlement Agreement all require Barry Civil to pay liquidated damages, interest on unpaid contributions, attorneys' fees and costs as a result of its failure to timely pay contributions to the Trust Funds, regardless of the reason for the untimely payment. As a result, there is no genuine issue of material fact regarding whether Barry Civil is liable for these payments due to its breach of the Trust Agreements and federal law. *See Albertson's*, 104 F.3d at 257.

## V.   CONCLUSION

For the reasons discussed above, the Court finds no genuine issues of fact that preclude summary judgment in plaintiffs' favor. Plaintiffs are entitled to liquidated damages equal to 12% of the amount of the delinquent contributions for January through April 2016, interest at the rate of twelve percent (12%) per annum for the delinquent contributions, attorneys' fees, and

costs from Barry Civil.  *See* Dkt. 17 (Second Kafer Decl.) at ¶¶ 3-4.   Accordingly, the Court hereby ORDERS as follows:

    (1)    Plaintiffs' motion for summary judgment, Dkt. 11, is GRANTED.

    (2)    Judgment is awarded in favor of plaintiffs and against defendant Barry Civil in the following amounts: $3,667.68 in liquidated damages, $154.72 in interest, and attorneys' fees and costs.

    (3)    The Clerk is directed to send copies of this Order to counsel for all parties.

DATED this 29th day of August, 2016.

*James P. Donohue*

JAMES P. DONOHUE
Chief United States Magistrate Judge

ORDER
PAGE - 12